IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| KENNETH J. KONIAS JR., | ) | |
| | ) | |
| Plaintiff, | ) | 2:19-CV-01550-CRE |
| | ) | |
| vs. | ) | |
| | ) | |
| DAVID DRUSKIN, PA-C; MICHAEL | ) | |
| HERBIK, DOCTOR; AND ALL MEDICAL | ) | |
| STAFF @ SCI FAYETTE WORKING THE | ) | |
| NIGHT SHIFT ON NOVEMBER 24, 25, 26, | ) | |
| 2017, | ) | |
| | ) | |
| Defendants, | ) | |

**MEMORANDUM OPINION**[1]

CYNTHIA REED EDDY, United States Magistrate Judge.

## I.    INTRODUCTION

Plaintiff Kenneth J. Konias, Jr. initiated this prisoner civil rights action against several medical professionals alleging unconstitutional medical treatment while in the custody of the Pennsylvania Department of Corrections at State Corrections Institution at Fayette ("SCI Fayette").

Pending before the Court is a motion for summary judgment by Defendants David Druskin ("PA-C Druskin") and Michael Herbik, M.D. ("Dr. Herbik"). ECF No. 90.  The motion is fully briefed and ripe for disposition. ECF Nos. 92, 96, 106, 113.  Plaintiff filed a brief in support of his own motion for summary judgment but did not file a separate motion. ECF No. 89. Nevertheless, the Court will construe Plaintiff as having filed a motion for summary judgment,

---

[1]     All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq*.

and that motion is fully briefed and ripe for consideration. ECF No. 95.  Additionally, Plaintiff filed a motion to appoint counsel which the Court held in abeyance pending the disposition of the present motions. ECF No. 101.

Jurisdiction is proper under 28 U.S.C. § 1331.  For the reasons that follow, Defendants PA-C Druskin and Dr. Herbik's motion for summary judgment is granted and the Court will grant summary judgment in favor of Defendant Nurse Tanner.  Plaintiff's motion for summary judgment is denied and Plaintiff's motion to appoint counsel is denied as moot.

## II.    BACKGROUND

### a.  Medical Treatment

As of January 2017, Plaintiff was prescribed Effexor for mental health treatment by DOC psychiatrist Peter Saavedra ("Dr. Saavedra"). Defs.' Statement of Material Fact ("Defs.' SMF") ECF No. 91 at ¶ 2.  Plaintiff was concurrently suffering from left wrist pain and was receiving treatment for his ailment. *Id*. at ¶ 3.  On November 9, 2017, Plaintiff was seen at sick call by Defendant PA-C Druskin for complaints of ongoing coughing and was assessed as having bronchitis which PA-C Druskin prescribed medication for and ordered Plaintiff to return to medical in two weeks. *Id*. at ¶ 11.  On November 22, 2017 at approximately 10:10 a.m., PA-C Druskin saw Plaintiff at sick call to follow up with his bronchitis. *Id*. at ¶ 13.  Plaintiff reported feeling better and following an exam, PA-C Druskin prescribed two medications for his wrist pain: Tylenol as needed, twice daily, for thirty days, and Nortriptyline (Pamelor) 75 mg as needed for thirty days. *Id*.  He wrote an order for Plaintiff to follow up in one month. *Id*.  That same day, at 10:37 a.m., the medication administration record suggests that the prescription for Effexor was discontinued, although it does not indicate who discontinued the medication. *Id*. at ¶ 14.

According to Plaintiff, when he went down to medical to get his daily prescribed mental health medication, Effexor, a nurse informed him that his prescription for Effexor had been removed from the computer and he did not receive his prescription for Effexor for four days. Pl's Statement of Material Facts ("Pl.'s SMF") ECF No. 99 at 2.  He alleges he was withdrawing from the medication and suffered from problems breathing, chest pains, convulsions and "blacking in and out." *Id*.  Defendants dispute that Plaintiff suffered the symptoms he alleges he did, as he did not report his symptoms when seen by medical. Defs.' SMF ECF No. 91 at ¶¶ 15; 17; 20.

On November 27, 2017, Plaintiff was seen by Dr. Saavedra and given his Effexor medication. Pl.'s SMF ECF No. 99 at 2.  According to Plaintiff, Dr. Saavedra informed him that either Dr. Herbik or PA-C Druskin deleted Plaintiff's prescription for Effexor from the computer and told Plaintiff that whenever someone enters a medication order in the computer system and the medication is in the same group as a medication already prescribed, the computer will automatically ask to delete the previous older order. *Id*. at 3.  Plaintiff maintains that Dr. Saavedra informed him that Pamelor and Effexor are in the same medication "group" in the computer system, and opined that when Plaintiff was prescribed Pamelor for his wrist pain, the computer system would have asked if Effexor should be deleted and Plaintiff's prescription was deleted in that way. *Id*.

b.   *Grievance No. 710381*

On December 4, 2017, Plaintiff submitted Grievance No. 710381 in which he complained of the following:

On Friday[,] November 24th, 2017, I wen[t] to 7 p.m. medline, like I do every night (and have been going for many years to get my psych meds ("Effexor"). When I scanned my I.D. at the nurse's window, Nurse "Tanner" looked at the computer and said she doesn't have any medications for me, their(sic) isn't any

3

meds listed in the computer. I asked Nurse Tanner if she could search/look further in the computer because that isn't right. I take the psych medication Effexor and have been getting it daily ever since psych Dr. Peter Saavedra prescribed it for my medical condition years ago. Nurse Tanner said that my psych med's(sic), the Effexor, was stopped and deleted from the computer. Nurse Tanner said to me she isn't giving me my psych med's(sic), but there is another new pain medication (Pamelor) showing it was added on (11-24-17) which I knew nothing about and I never requested or agreed too(sic). I asked Nurse Tanner if she can call a supervisor because I need to take my Effexor (psych) med's(sic), that their(sic) must be something wrong in the computer. Nurse Tanner said she'll check and for me to go back to my block. Before I left her window I express[ed] my concerns to her about the seriousness of not getting my psych meds and how worried I was because I've been taking those meds for a long time and I know I don't want to get sick, or worse, going through physiological and physical, symptoms upon withdraw being chemically dependent on the meds. I went back Sat. 11/25 and Sun 11/26 medlines and they still didn't give me my meds. On Saturday I was severely sick and in unbearable pain. It felt like I was dieing(sic) and I really thought I was because of what was happening to my body. I couldn't eat, sleep, was hot and cold, having cold sweats, couldn't keep my balance and kept falling, felt like every bone in my body was aching, headaches, having seizures, very light-headed, was randomly passing out and not knowing was happened, shortness of breath, nausea, confusion, throwing up, dizziness and constant non-stop shaking/twitching as mental health issues. These symptoms continue Saturday, Sunday, Monday, Tuesday then began to start to go away Wednesday. Also on Saturday, I somehow ended up passing out and seizing. The next thing I know I woke up on the floor by my cell door by night-turn Lt. Korvick and night-turn C/O Santilo. At that time I couldn't catch my breath and was having chest pains. Lt. Korvick called medical emergency and more C/Os came but none from medical came at all. The Lieutenant called medical again and they told him they weren't coming, to tell me to put in a sick call. This is a major concern and problem which not only violates D.O.C. Policies and Procedures, but is a violation of Federal, State and Local laws. I had a serious medical need and medical personal(sic) acted recklessly in failing to provide any medical care and left me to suffer, not even coming to check on me, even though they were called by a D.O.C. supervisor (Lt. Korvick) for a medical emergency. Finally was able to see psych Dr. Saavedra Monday afternoon. As soon as I arrived at medical the C/O told me to go to the trauma room, where Nurse Don came over to me with my Effexor psych meds and a cup of water. I took my meds and was told to go see Dr. Saavedra in his office. After speaking with Dr. Saavedra (psych), he told me immediately that someone from medical should've quickly taken me down to the medical trauma unit and called/paged him as soon as possible when I started to get sick/ill. Here is a protocol that is supposed to be followed and the medical personal(sic) were supposed to call and get hold of Dr. Saavedra (psych) regardless of when it is if something like this emergency happens, which medical don't(sic) do. According to D.O.C. Policy 13.8.1 (Access to Mental Health Care Procedures/Manual) it states "after normal

business hours, or if there is no psychiatrist/PCRNP currently available during normal business hours, the on-call psychiatrist/PCRNP shall be contacted. The registered Nurse Supervisor/Designee shall discuss the inmate's condition with the on-call psychiatrist/PCRNP and document this discussion, and any psychiatric recommendations and verbal orders, in the progress notes and the physician's order sheet." This was never done or followed, and someone needs to be held accountable. Dr. Saavedra said she doesn't know why they didn't call him but they should've, and they called him before after hours for things that are no way near as is important as what my problem was. They should've helped me and called him because "this was a serious situation" that I was in and the "medical staff are wrong." Dr. Saavedra said that I should've received my medication that it didn't expire. Medical Dept. messed up. It turned out what happened and why I didn't receive my psych (Effexor) medication was that someone from the regular medical department (not psych) had deleted my psych medication from the computer. This was the entire cause of everything. They did not have permission from the psych department or even let anyone know. How can someone from the regular medical department delete somebody's psych meds for absolutely no reason at all, knowing the severe health problems that will occur from the lack of receiving the medication. I don't know if this person from the regular medical (not psych) deleted my psych medication on purpose or not, but I'm starting to think that it was purposefully because I put in a grievance a few months ago regarding the regular medical department (could this be retaliation?), because it was very clear that regular medical should not be messing with psychiatric mediations, that is why the D.O.C. has a psychiatric department. Whoever was from regular medical department that completed erased and deleted my psych meds was wrong and as I stated earlier put me through tremendous pain & suffering and to date I haven't fully recovered from all of the effects. This was a serious medical needs and as I stated above how can a medical dept. put someone through this. They've not only made one mistake (deleting my meds), but they also denied me serious medical care that was needed, which demonstrates a conscious disregard of medical care that was needed, which demonstrates a conscious disregard of the substantial intentionally or deliberately failed to provide any of the required treatment, which resulted in further injury/sickness some of which I still continue to experience because of this event. Because of all of the above mentioned, I also request compensatory and punitive damages in the amount of $1,200,000.00- One Million, Two Hundred Thousand and Zero Cents.

Defs.' SMF ECF No. 91 at ¶ 18.

Registered Nurse Supervisor Romese issued an Initial Review Response to Grievance No. 710381 on December 26, 2017 noting the following:

1. The inmate's Effexor was inadvertently discontinued by Mr. Druskin, PA-C when he ordered another type of psychotropic medication for your pain on sick call.

2. On 11/24/2017 there was not an order for Effexor therefore it could not be dispensed to the inmate.  Nurse Tanner did look into the matter and emailed Dr. Saavedra.

3. The Effexor was reordered on 11/27/2017 and given to the inmate.  Dr. Saavedra also saw the inmate on 11/27/2017.

4. Officer Santillo does state that she called medical and the inmate was advised to sign up for sick call.  The nurse that was on for that evening was also on midnight shift and knew that the inmate was upset about his medication change and had been seen at the pill window.  There is not a Lieutenant by the name of Lt. Korvick.

5. Nurse Tanner states that when the inmate was at the pill window, he was in no acute distress.

In conclusion: The inmate was seen multiple times at the pill window over this course of time.  He was in no acute distress and Dr. Saavedra was made aware on 11/27/17 and reordered the medication.  He also assessed the inmate. This Grievance is denied.

*Id*. at ¶ 22.

Plaintiff appealed the grievance denial to the Facility Manager on January 9, 2018.  On February 2, 2018, Facility Manager, Mark Capozza, issued a Response to Grievance No. 710381, upholding the initial denial of the grievance and Plaintiff filed a final appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") on February 5, 2018. *Id*. at ¶ 26.  On May 21, 2018, SOIGA issued a final decision on Grievance No. 710381, following a review by the Bureau of Health Care Services, finding that the medical care provided was reasonable and appropriate and upheld the grievance denial. *Id*. at ¶ 30.

## III.    STANDARD OF REVIEW

A *pro se* pleading is held to a less stringent standard than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). As a result, a *pro se*

complaint under § 1983 must be construed liberally, *Hunterson v. DiSabato*, 308 F.3d 236, 243 (3d Cir. 2002), so "as to do substantial justice." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (citations omitted). While *pro se* litigants are afforded this leniency, they "do not have a right to general legal advice from judges," and "courts need not provide substantive legal advice to pro se litigants" because pro se litigants must be treated "the same as any other litigant." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013); *U. S. ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969) ("petition prepared by a prisoner ... may be inartfully drawn and should be read "with a measure of tolerance")).

The standard for assessing a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled. A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (citations omitted). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. *See*

7

*Anderson*, 477 U.S. at 255; *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004); *Boyle v. Cnty. of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48. An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with respect to that issue. *Id.* "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Huston*, 568 F.3d at 104.

A plaintiff may not, however, rely solely on his complaint to defeat a summary judgment motion. *See, e.g., Anderson*, 477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Allegations made without any evidentiary support may be disregarded. *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000).

Where, as here, there are cross-motions for summary judgment, it is simply a claim by each party that it alone is entitled to summary judgment. *Canal Ins. Co. v. Sherman*, 430 F. Supp. 2d 478, 483 (E.D. Pa. 2006). Cross motions for summary judgment "do not constitute an agreement that if one is denied the other is necessarily granted, or that the losing party waives judicial consideration and determination of whether genuine issues of material fact exist." *Id.* "When confronted with cross-motions for summary judgment, the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard." *Marciniak v. Prudential Fin. Ins. Co. of Am.*, 184 F. App'x 266, 270 (3d Cir. 2006).

### IV.    DISCUSSION

Plaintiff asserts claims for deliberate indifference to his serious medical needs in violation of the Eighth Amendment under 42 U.S.C. § 1983 and negligence under Pennsylvania law against Defendants Dr. Herbik and PA-C Druskin. Because both Plaintiff and Defendants move for summary judgment, each motion will be separately addressed.

### a.    *All Medical Staff at SCI-Fayette Working the Night Shift on November 24, 25, 26, 2017 Defendants*

Before addressing the merits of the pending motions, the Court must address the unidentified Doe Medical Defendants.  Plaintiff named in his complaint as Defendants "All Medical Staff at SCI-Fayette working the night shift on November 24, 25, 26, 2017."  The crux of Plaintiff's claims against these Defendants is that he was experiencing withdrawal symptoms from not receiving his Effexor medication, they did not treat him during these nights and instead told him to sign up for sick call.

The record reflects that the only night that medical care was requested for Plaintiff, and he did not receive it was on Saturday, November 25, 2017.  On that occasion, Plaintiff was seen at the "pill window" and according to medical staff did not appear to be in acute distress. Plaintiff maintains that after being seen at the pill window on November 25, 2017, he passed out in his cell.  Corrections Officer Santillo called medical to report this and the nurse on staff advised Plaintiff to sign up for sick call and did not provide immediate treatment.  According to the nurse on staff, she knew Plaintiff was upset about his medication change and had seen Plaintiff at the "pill window."

Because the only occasion in which Plaintiff was allegedly denied medical care was by the nurse on staff on Saturday, November 25, 2017, the claims against all other Doe Defendants

are dismissed.[2] Discovery closed in this case on June 30, 2022. At a case management conference, the Court ordered Plaintiff to substitute the John/Jane Doe Defendants or voluntarily dismiss them by June 8, 2022, and informed Plaintiff that failure to name these Defendants by that date would result in those Defendants being dismissed from the case. ECF No. 78. Plaintiff has provided no evidence of any personal involvement by the remaining Doe Defendants in his alleged civil rights violations, nor has he provided any evidence that he sought and was denied medical care on any other date. Moreover, Plaintiff has failed to identify any of these Doe defendants and Doe defendants are only permitted "to stand in for the alleged real parties until discovery permits the intended defendants to be installed." *Johnson v. City of Erie, Pa.*, 834 F. Supp. 873, 878 (W.D. Pa. 1993) (citations omitted). If "discovery yields no identities[,]" the fictitious parties must be dismissed. *Scheetz v. Morning Call, Inc.*, 130 F.R.D. 34, 37 (E.D. Pa. 1990). *Graham-Smith v. City of Wilkes-Barre*, No. 3:17-CV-00239, 2020 WL 9607112, at *5 (M.D. Pa. Feb. 26, 2020) (a court may *sua sponte* dismiss unidentified John/Jane Doe defendants if a plaintiff fails to amend the complaint to identify those defendants). Therefore, all Doe defendants except for the nurse who allegedly denied Plaintiff medical care on the night of November 25, 2017 are dismissed.

On February 9, 2023, Plaintiff moved to add Nurse Kristina Tanner as a defendant. Plaintiff's motion was denied because Nurse Tanner was originally named as a defendant and she was dismissed because Plaintiff failed to allege any sufficient information to state a claim against Nurse Tanner and had previously amended his complaint, and because Nurse Tanner's

---

[2]      Under the PLRA, "dismissal can occur early for the facially inadequate complaints pursuant to [28 U.S.C. § 1915A] or can occur later" if the dismissal provision of 42 U.S.C. § 1997e(c) is satisfied. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109 n.11 (3d Cir. 2002). Each defendant in a civil rights action must have personal involvement in the alleged constitutional violations by showing personal direction or actual knowledge and acquiescence. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)

identity was known to Plaintiff at the time he filed his complaint. ECF No. 105. Plaintiff argues that he only became aware that Nurse Tanner was the nurse that he alleges denied him medical care on November 25, 2017 after Defendants moved for summary judgment and identified Nurse Tanner as the nurse on call for the night shift on November 25, 2017.

The record is undisputed that Nurse Tanner was the nurse on call for the night shift on November 25, 2017. While it is undisputed that Plaintiff knew the identity of Nurse Tanner from the inception of this case, it is also possible that he did not know that Nurse Tanner was the nurse on staff that allegedly denied him medical care on November 25, 2017. According to Plaintiff, he was only informed that he would not be treated by medical on that night and would have to sign up for sick call. Reviewing the record in the light most favorable to Plaintiff, it is possible that the first he learned of the identity of the night nurse on November 25, 2017 was through the Defendants' motion for summary judgment. The grievances submitted by Plaintiff do not unequivocally identify Nurse Tanner as having allegedly denied him medical care, nor do the institution's responses to those grievances state for certain that the nurse on call for the night shift on November 25, 2017 was Nurse Tanner. Therefore, in the interests of justice, the Court will address the substance of Plaintiff's claims of deliberate indifference and negligence related to the night of November 25, 2017 against Nurse Tanner.

### b. *Deliberate Indifference*

Plaintiff alleges that PA-C Druskin and Dr. Herbik were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment for inadvertently discontinuing his medication. He also alleges that Nurse Tanner was deliberately indifferent to his serious medical needs by failing to immediately respond after he lost consciousness in his cell and telling him to sign up for sick call.

11

In accordance with the Eighth Amendment's prohibition against cruel and unusual punishment, the government is obliged "to provide medical care for those whom it is punishing by incarceration." *Estelle*, 429 U.S. at 103. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Id.* at 104 (citation omitted). Such a claim requires that a plaintiff allege "(i) a serious medical need, and (ii) acts or omissions by prisoner officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *see also West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978) ("This standard is two-pronged. It requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious.").

A medical need is "serious" if "it is one that has been diagnosed by a physician as requiring treatment …[,] one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention[,]" *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation omitted), or where a denial of treatment results in the "unnecessary and wanton infliction of pain," *Estelle*, 429 U.S. at 104 (citation omitted), or results in a life-long handicap or permanent loss. *Monmouth County Correctional Institutional Inmates*, 834 F.2d at 347.

The "deliberate indifference" a plaintiff must allege lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other" and is often equated with recklessness as that term is defined in criminal law. *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994). This standard "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). When a prisoner has received medical care and only

the adequacy of the treatment is disputed, courts are often reluctant to second guess professional medical judgment. *See id.* Even so, deliberate indifference can be manifested by an intentional refusal to provide care, delayed medical treatment, and the denial of prescribed medical treatment. *See Durmer v. O'Carroll*, 991 F.2d 64, 64 (3d Cir. 1993); *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009) ("Deliberate indifference may be shown by intentionally denying or delaying medical care.").  A mere difference of opinion between the prison medical staff and the inmate regarding the diagnosis or treatment received by the inmate does not constitute deliberate indifference. *Monmouth County Correctional Institutional Inmates*, 834 F.2d at 346. Indeed, "[m]ere medical malpractice, negligence, and courses of treatment inconsistent with the desires of the prisoner . . . do not constitute deliberate indifference to serious medical needs." *Lopez v. Corr. Med. Servs., Inc.*, 499 F. App'x 142, 146 (3d Cir. 2012) (citing *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004)). The key question is whether the defendant has provided the inmate with some type of treatment, no matter if it is what the inmates desires. *See e.g.*, *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.").

i. PA-C Druskin and Dr. Herbik

Plaintiff's claim for deliberate indifference against PA-C Druskin and Dr. Herbik is that one of them inadvertently discontinued Plaintiff's medication for Effexor when Plaintiff was prescribed Pamelor for his wrist pain. Notwithstanding that the record does not reflect any personal involvement of Dr. Herbik of Plaintiff's medication discontinuance beyond speculation, *Rode*, 845 F.2d at 1207, Plaintiff's medication delay does not rise to the level of deliberate indifference.

An inadvertent failure to provide adequate medical care does not constitute an

unnecessary and wanton infliction of pain or is not repugnant to the conscience of humanity. *Sample v. Diecks*, 885 F.2d 1099, 1109 (3d Cir. 1989). Moreover, sporadic delays of receiving prescription medication without more does not constitute deliberate indifference. *Hartman v. Corr. Med. Servs.*, 366 F. App'x 453, 455 (3d Cir. 2010) (unpublished) (repeated occurrences of medication lapses to treat a heart condition was not deliberate indifference); *Ayala v. Terhune*, 195 F. App'x 87, 91 (3d Cir. 2006) (unpublished) (a four-day delay in providing prescribed pain medication was not deliberate indifference); *Knepp v. Paraway*, No. 1:19-CV-00153, 2020 WL 7865401, at *11 (W.D. Pa. Nov. 18, 2020), report and recommendation adopted, 2020 WL 7864199 (W.D. Pa. Dec. 31, 2020) (finding no deliberate indifference where plaintiff-inmate was not given one of three daily doses of a medication for four days in a row and he alleged he suffered "severe chest pain, nausea, sweating and vomiting to the point there was nothing left to vomit" because there was no intentional withholding of his medication and his symptoms were temporary); *Cowher v. Pike Cnty. Corr. Facility*, No. 3:16-CV-02259, 2019 WL 3302415, at *13 (M.D. Pa. July 23, 2019) (going four or five days without medication is not deliberate indifference).

The record is clear that Plaintiff's three- to four-day delay in receiving his medication was because PA-C Druskin inadvertently deleted Plaintiff's medication from the computer system after prescribing him another medication in the same category and the computer system asked him to delete the older medication.   PA-C Druskin's inadvertent discontinuance of Plaintiff's Effexor medication is insufficient to show that he acted with the necessary subjective intent required to show deliberate indifference. *See Farmer*, 511 U.S. at 837.   Additionally, assuming the symptoms Plaintiff suffered were caused by the medication delay, there is no evidence that those symptoms were anything but temporary.   Accordingly, because the delay in

Plaintiff's medication did not constitute deliberate indifference, Defendants Dr. Herbik and PA-C Druskin are entitled to summary judgment on Plaintiff's deliberate indifference claim.

ii.  <u>Nurse Tanner</u>

Plaintiff alleges that Nurse Tanner was deliberately indifferent to his serious medical needs when she told him to sign up for sick call after he temporarily lost consciousness and did not immediately provide him with medical care on November 25, 2017.  Despite Plaintiff's contentions, he has adduced no evidence that a reasonable jury could conclude that he suffered from a serious medical need.

A medical need is serious if "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). While a jury could conclude that Plaintiff temporarily lost consciousness, Plaintiff has provided no evidence that Nurse Tanner's failure to immediate respond to him resulted in any lasting or permanent injuries or any unnecessary and wanton infliction of pain.  Other courts have similarly found that a temporary loss of consciousness, without more, does not amount to a serious medical need under the Eighth Amendment. *See Bocchino v. City of Atl. City*, 179 F. Supp. 3d 387, 406 (D.N.J. 2016) (no serious medical need where inmate-Plaintiff temporarily lost consciousness and suffered from several contusions); *Mohorcic v. Hogue*, No. CIV.A. 11-575, 2013 WL 6118693, at *3–4 (W.D. Pa. Nov. 21, 2013) (no serious medical need where inmate-plaintiff received no medical care after he tripped, hit his head on a concrete wall, temporarily lost consciousness, and had "blurry vision" upon regaining consciousness); *Vilchis v. City of Bakersfield*, No. 1:10-CV-00893 LJO, 2012 WL 113747, at *12 (E.D. Cal. Jan. 13, 2012) (no serious medical need where plaintiff lost consciousness, suffered abrasions and contusions to the head and face with some bleeding).

Nothing in the record suggests that Plaintiff suffered anything more than temporary discomfort because of his loss of consciousness, and there is no evidence of record suggesting that Plaintiff suffered from any lasting or permanent injuries as a result of not receiving immediate medical treatment.  Thus, the record does not support a finding that Plaintiff suffered from a serious medical need, and Nurse Tanner is entitled to summary judgment in her favor on Plaintiff's claim for deliberate indifference.[3]

          *c.  Negligence/Medical Malpractice*

              i.  <u>PA-C Druskin and Dr. Herbik</u>

Next, PA-C Druskin and Dr. Herbik argue that they are entitled to summary judgment for Plaintiff's negligence claim because there is no evidence that the discontinuance of Plaintiff's medication led to his symptoms and there is no evidence that Defendants deviated from the medical standard of care.  Defendants argue that to prove these elements requires expert testimony and because Plaintiff maintains that expert testimony is unnecessary in this case, Defendants are entitled to summary judgment.

Under Pennsylvania law, to avoid summary judgment on a medical malpractice claim, the plaintiff must demonstrate the treating medical professional owed him a duty and breached it, the breach caused the plaintiff harm, and the plaintiff suffered damages as a result. *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 573 Pa. 245, 824 A.2d 1140, 1145 (2003). Pennsylvania law typically requires expert testimony to establish the elements of a medical malpractice claim including to establish the "applicable standard of care, the deviation from that standard, causation and the extent of the injury." *Id.*  There is a very narrow exception: where the matter "is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of

---

[3]     *See Grayson*, 293 F.3d at 109 n.11.

even non-professional persons[,]" will expert testimony not be required to establish the elements of a medical malpractice claim. *Hightower-Warren v. Silk*, 548 Pa. 459, 698 A.2d 52, 54 n.1 (1997). Importantly here, expert testimony is generally required to prove causation of a medical condition. *Feit v. Great W. Life & Annuity Ins. Co.*, 271 F. App'x 246, 252 (3d Cir. 2008). As here, once a plaintiff certifies under Pa. R. Civ. P. 1042.3(a)(3) that no expert testimony is required to prove his claims, he is bound by that certification and is precluded from introducing expert testimony on the elements of standard of care and causation which may result in his claims being dismissed. *See Rodriguez v. United States*, No. CV 3:14-1149, 2016 WL 4480761, at *4 (M.D. Pa. Aug. 23, 2016) (quoting Pa. R. Civ. P. 1042.3(a)(3)), *aff'd*, No. 16-3913, 2017 WL 2438205 (3d Cir. June 6, 2017).

Plaintiff's medical malpractice claim against PA-C Druskin and Dr. Herbik for failing to receive his medication for four days requires expert testimony to prove a deviation of the standard of care and causation and because Plaintiff has offered no expert testimony about standard of care or causation, Defendants are entitled to summary judgment. "Generally speaking, laypeople do not know the skill or care expected of medical professionals in a given situation, nor do they know if an injury or adverse outcome reveals that the requisite level of care was not followed." *Brown v. Hahnemann Univ. Hosp.*, 20 F. Supp. 3d 538, 544 (E.D. Pa. 2014). While a nonprofessional may be able to find that Plaintiff suffered from problems breathing, chest pains, convulsions and "blacking in and out" during the four days he went without his medication, expert testimony is required to prove that the medication discontinuance caused these symptoms or was substandard care. *Jackson v. United States*, No. 1:20-CV-165, 2021 WL 5359161, at *4 (M.D. Pa. Nov. 17, 2021) (plaintiff's medical malpractice claim involving a six-day lapse in prescription medication which resulted in an ulcerative colitis flare-up concerned complex issues

relating to the standard of care and causation which could not be established without expert testimony).  Accordingly, PA-C Druskin and Dr. Herbik are entitled to summary judgment for Plaintiff's medical malpractice claim.

### ii.  Nurse Tanner

Likewise, Nurse Tanner is entitled to summary judgment for Plaintiff's negligence claim. While a nonprofessional could conclude that Plaintiff lost consciousness on the night of November 25, 2017, expert testimony is required to prove that Nurse Tanner not providing immediate medical care was substandard and caused any injuries to Plaintiff. *See Brown*, 20 F. Supp. 3d at 544.  Because Plaintiff has no such expert testimony, Nurse Tanner is entitled to summary judgment for Plaintiff's medical malpractice claim.[4]

### d.  *Plaintiff's Motion for Summary Judgment and Motion to Appoint Counsel*

Because the Court concludes that the record does not support claims for deliberate indifference or negligence under Pennsylvania law for any remaining Defendant, Plaintiff is not entitled to summary judgment on these remaining claims and his motion for summary judgment is denied.  Likewise, because this decision terminates the case, Plaintiff's motion to appoint counsel is denied as moot.

## V.    CONCLUSION

For these reasons, Defendants PA-C Druskin and Dr. Herbik's motion for summary judgment is granted in its entirety.  Defendant Nurse Tanner is entitled to summary judgment for all remaining claims against her.  Plaintiff's motion for summary judgment is denied and his motion to appoint counsel is denied as moot.  An appropriate Order follows.

DATED this 12th day of September, 2023.

---

[4]      *See Grayson*, 293 F.3d at 109 n.11.

BY THE COURT:

s/Cynthia Reed Eddy
United States Magistrate Judge

cc:     Kenneth J. Konias, Jr.
        LK6409
        SCI Fayette
        50 Overlook Drive
        LaBelle, PA 15450

        Counsel of record *via CM/ECF electronic filing*